**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

BLAINE TRAVIS FIFIELD,
              *Defendant-Appellant.*

No. 06-30171

D.C. No.
CR 03-0042 DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Submitted March 8, 2007*
Seattle, Washington

Filed May 7, 2007

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge O'Scannlain;
Concurrence by Judge Tashima

*The panel unanimously finds this case appropriate for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

**COUNSEL**

John Rhodes, Assistant Federal Defender, Missoula, Montana, for the defendant-appellant.

Eric B. Wolff, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

On his first appeal, Blaine Travis Fifield was granted a limited remand pursuant to *United States v. Ameline*, 409 F.3d

1073 (9th Cir. 2005) (en banc). On remand, the district court declined to revisit Fifield's sentence. Fifield again appeals, arguing that the district court erred by failing to request his views regarding an appropriate sentence under the advisory guidelines regime before making its decision. We have jurisdiction over the appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we again remand.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Fifield was convicted in Montana state court in early 2003 for the felony of assault with a dangerous weapon. Thereafter, Fifield was charged in federal court with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3) and 21 U.S.C. § 802. Fifield pleaded guilty, and the district court calculated the then-mandatory Sentencing Guidelines' range at 46 to 57 months' imprisonment.

On July 6, 2004, the district court sentenced Fifield to 54 months' imprisonment. Subsequent to Fifield's sentencing, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), declaring the United States Sentencing Guidelines advisory rather than mandatory. *Id.* at 259-65.

Fifield appealed, arguing that it was error for the district court to have sentenced him under the pre-*Booker* mandatory guideline scheme. We rejected most of Fifield's arguments against the propriety of his sentence, but did grant a limited *Ameline* remand and, on such remand, ordered the district court " 'to answer the question whether the sentence would have been different had the court known that the Guidelines were advisory.' " *United States v. Fifield*, 432 F.3d 1056, 1067 (9th Cir. 2005) (quoting *Ameline*, 409 F.3d at 1084).

Shortly after it received the mandate of this court, the district court, without requesting or receiving any input from

counsel for the government or Fifield, issued an order denying resentencing. It stated that it had reviewed the record and decided that its sentence "would not have been materially different had I known the United States Sentencing Guidelines were advisory." The court concluded, "the Defendant will not be resentenced and the sentence previously imposed on July 6, 2004 remains in full force and effect." This appeal followed.

## *ANALYSIS*

**[1]** *Ameline* states that "the 'views of counsel, at least in writing,' should be obtained." *Ameline*, 409 F.3d at 1085 (quoting *United States v. Crosby*, 397 F.3d 103, 120 (2d Cir. 2005)). We have previously held that the failure to seek the views of counsel before making the decision of whether or not to resentence violates *Ameline* and constitutes reversible error.

In *United States v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006), the defendant's case had been remanded to the district court with instructions to determine, pursuant to *Ameline*, whether the district court would have sentenced the defendant differently had it known the sentencing guidelines were advisory. *Id.* at 1068. Shortly after receiving our mandate, the district court issued a short order declining to alter the defendant's sentence without inviting or receiving any input from counsel. *Id.* The defendant appealed for the second time.

**[2]** We held that the district court had committed reversible error by failing to comply with the original mandate to follow *Ameline*. *Id.* at 1069 (holding that "a district court must obtain, or at least solicit, the views of counsel in writing before deciding whether re-sentencing is appropriate"). Examining the text of *Ameline*'s majority and dissenting opinions, as well as the Second Circuit case upon which *Ameline* was largely based, the court concluded that *Ameline*'s use of the word "should" indicated a requirement. *Id.* at 1069-70. The court reasoned further that "allowing the parties to file

written submissions is . . . necessary for the district court to meaningfully comply with *Ameline*'s remand procedure." *Id.* at 1070. Such written submissions can bring to the sentencing court's attention factors which previously may have been thought to be unimportant under a mandatory guidelines sentencing regime, but that may provide a basis for resentencing. *Id.* at 1071. Obtaining input from counsel also facilitates appellate review of the sentence for reasonableness by encouraging the district court to frame its analysis in terms of the factors under 18 U.S.C. § 3553(a). *Id.* Finally, we declined to hold that the failure to obtain counsel's views on an *Ameline* remand could be addressed by harmless error review. *Id.* at 1072 n.3. We thus remanded the case a second time for compliance with *Ameline*. *Id.* at 1071-72.

**[3]** Here, as in *Montgomery*, the district court made its decision without soliciting the views of the parties. Under *Montgomery*, this was error. We therefore again remand the sentence to the district court for compliance with the procedures set forth in *Ameline*.

**Sentence REMANDED.**

O'SCANNLAIN, Circuit Judge, concurring specially:

I agree with the court that *United States v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006), requires a remand because the sentencing judge did not consider the views of counsel before affirming Fifield's sentence on limited remand pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). However, I write separately to express my concern that *Montgomery* transforms the role of the judge in a way that the decision in *Ameline* does not require.

The crux of the problem is *Ameline*'s reference to the remand procedure established by the Second Circuit in *United*

*States v. Crosby*, 397 F.3d 103, 120 (2d Cir. 2005). The *Crosby* decision states that a sentencing judge assessing the reasonableness of a pre-*Booker* sentence "should obtain the views of counsel, at least in writing," prior to determining whether she would have chosen the same sentence under advisory guidelines. 397 F.3d at 120. This court's *Ameline* decision cites *Crosby* and agrees "that the 'views of counsel, at least in writing,' should be obtained." 397 F.3d at 120.

Like the *Montgomery* panel, I have no doubt that *Ameline* supports the right of counsel to have its written views considered on this type of limited remand. However, I disagree with the holding in *Montgomery* that *Ameline* places the burden on sentencing judges to notify counsel on pain of reversible error. *Montgomery* states: "Many district courts in this circuit have read the quoted statement as a requirement. . . . We now explicitly restate what *Ameline* requires: that, on *Ameline* remand, a district court must obtain, *or at least solicit,* the views of counsel in writing before deciding whether re-sentencing is appropriate." *Montgomery*, 462 F.3d at 1069 (emphasis added). I believe that this interpretation of *Ameline* mistakes *ipse dixit* for constitutional law and misapprehends the proper role of the judge.

In our adversarial legal system, Article III judges traditionally function as passive and neutral decisionmakers. Unlike the judges of the continental legal systems of Europe, who serve in both investigative and adjudicatory capacities, American judges are informed by the parties through an adversarial method. *See* ROBERT A. KAGAN, ADVERSARIAL LEGALISM: THE AMERICAN WAY OF LAW 9 (2003) (describing the American adversarial approach as one in which "the assertion of claims, the search for controlling legal arguments, and the gathering and submission of evidence are dominated not by judges or government officials but by disputing parties or interests, acting primarily through lawyers"). Thus, American judges play a limited role;[1] the burden rests on the parties (both private

---

[1] Our law distinguishes the role of judges who decide cases from the role of magistrates and non-Article III judges who actively investigate cases.

and governmental) to ensure that offenses are prosecuted and relevant issues come to light. Our system is willing to leave some wrongs unpunished to preserve the functional divide: the doctrines of waiver and procedural default represent this willingness.

*Montgomery* requires judges to overlook their limited role in a centuries-old American tradition of adversarial litigation. While *Montgomery* stops short of instating a rule that the court must *successfully* obtain the views of counsel—an impossible requirement—the decision shifts the burden of going forward to the judge.[2] I cannot accept that our *Ameline* decision requires judges in this way to depart from traditional adversarial procedure. I read *Ameline* simply to require that a sentencing judge consider the written views of counsel if such views are filed by the parties.[3] Due process requires no more.

*See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83 (1982) ("Critical to the Court's decision [in *United States v. Raddatz*, 447 U.S. 667 (1980)] to uphold the Magistrates Act was the fact that the ultimate decision was made by the district court."). In *Morrison v. Olson*, 487 U.S. 654 (1988), the Court described the circumscribed role of judges in an adversarial system, although the Court remarked: "By way of comparison, we also note that federal courts and judges have long performed a variety of functions that . . . do not necessarily or directly involve adversarial proceedings within a trial or appellate court. For example, federal courts have traditionally supervised grand juries and assisted in their 'investigative function' by, if necessary, compelling the testimony of witnesses." *Id.* at 681 n.20. *Montgomery* requires something different and incongruous in our adversarial system: courts must prod the parties themselves.

[2]*Montgomery* asserts in a conclusory *footnote* that failure to follow this procedure cannot be resolved by harmless error review. 462 F.3d at 1072 n.3.

[3]Motions or objections often are the proper vehicles to catalyze judicial action. In a trial, parties may object to the admission of evidence or may move for a mistrial. If parties do not protest, even *constitutional* injustices may go uncorrected. Judges are not required to solicit the views of counsel in order to avoid such mistakes, though they must consider objections or motions if raised.

I concur in the current remand but object to the active burden that *Montgomery* places on the judge.

Hopefully there will be an opportunity for an en banc court to reconsider the wisdom of this practice.

---

TASHIMA, Circuit Judge, with whom BERZON, Circuit Judge, joins, concurring:

I file this separate concurrence only to express my disagreement with Judge O'Scannlain's criticism of *United States v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006). Because the "*Ameline* remand" is entirely judge-fashioned, there are no preexisting rules which govern the procedures to be followed on such a remand. *Montgomery*'s interpretation of *Ameline*'s requirement imposes no more than that notice and an opportunity to be heard be given — due process-like requirements — which we have imposed in a wide variety of contexts. *See, e.g.*, *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999) (holding that due process requires that an attorney be given notice and an opportunity to be heard before sanctions can be imposed against him). Given the consequences at stake, I do not believe that requiring "sentencing judges to notify counsel" places an undue "burden" upon them or, in any manner, "misapprehends the proper role of the judge."